IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IVY HESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 4892 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ivy Hester brings this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, alleging negligent and intentional infliction of emotional distress (Counts I and II) and negligent supervision (Count III). The Government moves for summary judgment on all claims. For the reasons stated below, the Government's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiff Ivy Hester brings this action against the United States seeking to hold it vicariously liable for the alleged acts or omissions of former United States postal worker John Swietek and his supervisors at the Postal Service facility in Mt. Prospect, Illinois. (Defendant's Rule 56.1 Statement of Material Facts ("DSOF") ¶ 4.) The following facts are drawn entirely from the Government's Rule 56.1 statement of material facts. Because Hester neither responded to the Government's statement of facts nor submitted a separate statement of additional facts, the Government's facts are deemed admitted. *See* Local Rule 56.1(b).

### The Accident

Hester, who has been employed as a truck driver for the past seven years, was driving his truck westbound on W. Golf Road in Mt. Prospect on the morning of August 8, 2007. (DSOF

¶¶ 3, 5.) As Hester neared the intersection of W. Golf Road and We Go Trail, Swietek attempted to commit suicide by stepping in front of Hester's moving truck. (*Id.* at ¶ 6.) When Hester saw Swietek, he swerved his truck but was unable to avoid contact. (*Id.* at ¶ 7.) The right bumper of Hester's truck struck Swietek, causing Swietek to suffer a leg fracture and abrasions. (*Id.*)

In his deposition, Hester was presented with a picture of the intersection between W. Golf Road and We Go Trail and was asked to mark the location where his truck first made contact with Swietek. (*Id.* at ¶ 8.) In response, Hester marked an "X" on the westbound lanes of W. Golf Road slightly to the east of the northeast corner of W. Golf Road and We Go Trail. (*Id.*) When police and medical personnel arrived at the scene of the accident, Hester told police what had happened, and Swietek admitted that he had stepped in front of Hester's oncoming truck. (*Id.* at ¶ 9.) Swietek was then taken to the hospital for treatment of his injuries. (*Id.*)

In the aftermath of the accident, several other postal employees arrived at the scene. (*Id.* at ¶ 10.) The first to arrive was Kenneth Labbé, who had been delivering mail on W. Golf Road when he happened to see Hester's truck stopped in the middle of the street. (*Id.*) When Labbé saw a postal service hat and mail bag at the scene, he reported the accident to the Mt. Prospect post office, and two supervisors (Chaeyeun Sa and James Carlson) came to investigate. (*Id.*) After visiting the scene, Sa prepared an accident report dated August 8, 2007. (*Id.* at ¶ 11.) The report noted, among other things, that Swietek's last delivery was made at 923 S. We Go Trail, that W. Golf Road was not within Swietek's delivery territory, and that Swietek was outside the "line of travel" for his route when he stepped in front of Hester's truck on W. Golf Road. (*Id.*)

Approximately two weeks after the accident, on August 23, 2007, Labbé prepared a written statement documenting his observations during the aftermath of the accident and an incident that occurred two days prior to the accident, on August 6. (*Id.* at ¶ 12.) In his statement, Labbé wrote that he saw Swietek behaving in an "unusual" way on August 6. (*Id.*) According to

Labbé, Swietek was standing on the corner of W. Golf Road and We Go Trail and staring eastward toward oncoming traffic on W. Golf Road for two to four minutes, as if he were waiting for a bus. (*Id.*) This was peculiar, Labbé explained, because Swietek's delivery route gave him no cause to come within 20 feet of W. Golf Road and instead required him to cross over We Go Trail in a westbound direction. (*Id.*) As an attachment to his written statement, Labbé provided a map showing that the normal path for Swietek's route went up and down We Go Trail, but did not require him to come into contact with W. Golf Road. (*Id.* at ¶ 13.)

Labbé also explained in his statement that, after he saw Swietek stare down W. Golf Road on August 6, he contacted Sharon Williams, the postmaster at the Mt. Prospect post office, and suggested that she perform a street observation of Swietek. (*Id.*) In her deposition, Williams confirmed that she received a call about Swietek's behavior on August 6. (*Id.* at ¶ 14.) As a result, Williams and another supervisor went out to check on Swietek and found him back on his route delivering mail. (*Id.*) When Williams asked if he was okay that day, Swietek said that he was fine. (*Id.*)

### Swietek's Worker's Compensation Claim

On August 21, 2007, Swietek submitted a claim to the U.S. Department of Labor seeking compensation for his injuries on August 8, 2007 under the Federal Employees Compensation Act ("FECA"). (DSOF ¶ 15.) On August 24, 2007, the Postal Service submitted a letter to the Department of Labor challenging Sweitek's request for FECA benefits. (*Id.* at ¶ 16.) The Postal Service's letter stated that Swietek had deviated from his route, and that Swietek's injuries had resulted from his own intent to hurt himself rather than from any employment factors. (*Id.*) The letter also explained that Labbé had reported "unusual" behavior by Swietek two days before the accident, causing the postal management to check on Swietek. (*Id.*) The letter further reported that when the postal management checked on Swietek, they found him back on his route

delivering mail, and Swietek told Postmaster Williams that everything was fine. (*Id.*) Finally, the Postal Service's letter noted that Swietek was undergoing treatment for personal stressors with anti-depression medication and had filed a previous claim for a psychological condition, which was denied by the Department of Labor eight years earlier in 1999. (*Id.*)

In a decision dated October 7, 2007, the Department of Labor notified Swietek that he was not entitled to compensation for his injuries under FECA because they did not arise out of, and in the course of, his federal employment. (*Id.* at ¶ 17.)

### Hester's Administrative Tort Claim

On August 27, 2008, Hester submitted an administrative tort claim to the Postal Service. (DSOF ¶ 18.) In the narrative that accompanied his administrative claim, Hester alleged that Swietek was an employee of the U.S. Postal Service, that Swietek entered onto W. Golf Road outside of the crosswalk and directly in front of Hester's truck, that Swietek breached his duty to yield to oncoming traffic, and that Swietek's attempted suicide caused Hester severe emotional distress, mental anguish, and post-traumatic stress disorder. (*Id.*) At no point in Hester's narrative statement, or any other portion of his administrative tort claim, did Hester mention Swietek's supervisors or allege that they had failed to properly supervise Swietek. (*Id.* at ¶ 19.) Nor did Hester allege that Swietek's supervisors knew or should have known about any emotional problems or suicidal tendencies by Swietek, or that they failed to prevent Swietek from interacting with the public. (*Id.*)

On February 26, 2009, the Postal Service denied Hester's administrative tort claim because Swietek was not acting within the scope of his employment at the time of the accident. (*Id.* at ¶ 20.) Specifically, the Postal Service explained that Swietek was not acting within the scope of his employment because he was off his route and because attempted suicide was not part of his postal duties. (*Id.*)

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

**ANALYSIS**

**I.     Negligent and Intentional Infliction of Emotional Distress (Counts I and II)**

Hester brings claims for negligent and intentional infliction of emotional distress, seeking to hold the Government vicariously liable for the harm allegedly caused by Swietek's attempted suicide. The Federal Tort Claims Act waives the Government's sovereign immunity only for injuries "caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b). Whether a government employee was acting within the scope of his employment at the time of an incident is a question of federal law. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435 (1995). The Court resolves that question by reference to Illinois law, which draws upon the Restatement (Second) of Agency § 228 to define the scope of employment. *Snodgrass v. Jones*, 957 F.2d 482, 484-85 (7th Cir. 1992). Under the Restatement, an employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir. 1998) (quoting *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (1989)) (internal quotation marks omitted). There is no evidence that Hester's suicide attempt, which occurred outside of his delivery route, meets any of these elements. Because Hester cannot raise any inference that Swietek was acting within the scope of his employment when he stepped in front of Hester's truck, Hester's claims for negligent and intentional infliction of emotional distress must fail.

## II.     Negligent Supervision (Count III)

Next, Hester asserts a claim for negligent supervision, alleging that Swietek's supervisors knew or should have known about Swietek's suicidal tendencies and the Postal Service breached its duty to properly supervise Swietek by failing to prevent him from interacting with the public. This claim fails as well because Hester did not exhaust his administrative remedies. Under the FTCA, a plaintiff must exhaust administrative remedies by presenting his claim to the appropriate federal agency before filing a federal lawsuit. *See* 28 U.S.C. § 2675(a). Although an administrative claim should be interpreted liberally and need not include legal theories, it "must narrate facts from which a legally trained reader would infer" a particular type of legal claim. *Murrey v. United States*, 73 F.3d 1448, 1451-54 (7th Cir. 1996). When Hester submitted his

administrative tort claim to the Postal Service, he included the facts underlying his claims for negligent and intentional infliction of emotional distress. However, he failed to include the facts that form the basis of his negligent supervision claim. Specifically, Hester's administrative claim neither mentioned Swietek's supervisors nor alleged that they failed to properly supervise Swietek. His claim also neglected to allege facts suggesting that Swietek's supervisors knew or should have known about his suicidal tendencies, or that they failed to prevent Swietek from interacting with the public. Because Hester failed to exhaust administrative remedies, he is barred from presenting his negligent supervision claim to this Court.

## CONCLUSION

For the reasons stated above, the Government's motion for summary judgment is GRANTED.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** November 19, 2010